HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DANNY P., *et al.*,<br><br>                Plaintiffs,<br><br>     v.<br><br>CATHOLIC HEALTH INITIATIVES, *et al.*,<br><br>                Defendants. | CASE NO. C15-5024 RBL<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT<br><br>[Dkts. #44 & 47] |

THIS MATTER is before the Court on the parties' cross-Motions for Summary Judgment [Dkts. #44 & 47]. The case is an ERISA administrative appeal of Defendant Catholic Health Initiative's denial of benefits for Plaintiff Nicole P. The cross motions address the same issue: whether the CHI plan's exclusion for room and board in a residential mental health treatment facility is enforceable.

Plaintiff Danny P. is a CHI employee who participated in CHI's employee welfare benefits plan, administered by Blue Cross. Plaintiff Angela P. is Danny's wife. Their daughter,

- 1

1  Nicole P.,[1] received mental health care and treatment at Island View Residential Treatment
2  Center in Utah, between July 2011 and March 2012. Nicole's claim for coverage for the cost of
3  her stay was processed, and initially denied, by Blue Cross's local affiliate, Regence. Blue Cross
4  and CHI denied Nicole's subsequent administrative appeals, and she sued.

5        Nicole concedes that the Plan itself expressly does not cover "room and board" for
6  residential mental health treatment. But she claims that the Plan's exclusion of such coverage
7  violates the Mental Health Parity and Addiction Equity Act of 2008—the "Parity Act"—because
8  it fails to provide coverage for residential mental health treatment that is "on par" with the
9  coverage it provides for medical or surgical treatment at an analogous level of care. She claims
10 that residential treatment on the mental health side is analogous to skilled nursing on the medical
11 side. She argues that standard of review is *de novo*, but that even if it is the deferential abuse of
12 discretion standard, she is entitled to benefits as a matter of law. She seeks benefits, prejudgment
13 interest and attorneys' fees.

14       CHI correctly articulates that the Parity Act generally requires parity between a plan's
15 medical or surgical coverage within a particular benefits classification on the one hand, and its
16 mental health coverage within the same classification, on the other. It concedes that the standard
17 of review is *de novo*, and, perhaps, that the Final Rules implementing the Act require such
18 coverage. But it argues that the Final Rules do not apply retroactively and that the *Interim* Final
19 Rules implementing the Parity Act apply—they were in effect when Nicole incurred the costs,
20 and when her claim for benefits was denied and appealed—and that they did not prohibit the
21 Plan's exclusion of coverage for room and board at a residential mental health facility.

22 _____

23     [1] For clarity, the Court will refer to "Nicole" as the primary plaintiff. No disrespect is
   intended by the use of her (or her parents') first name.
24

# I. BACKGROUND

**A. The 2008 Parity Act.**

The 1996 Mental Health Parity Act required group health plans to impose the same aggregate lifetime and annual dollar limits for mental health benefits that the plans impose on medical or surgical benefits. In 2008, the Paul Wellstone and Pete Domenici Mental Health and Addition Equity Act expanded these requirements. This "Parity Act" extended the MHPA's parity requirement to financial requirements and treatment limitations. See 29 U.S.C. §1185(a)(3)(A)(i)-(iii); *see Craft v. Health Care Serv. Corp.*, 2015 U.S. Dist. LEXIS 37926 (N.D. Ill. 2015). Under the Parity Act, a Plan must ensure that (1) the treatment limitations applicable to mental-health benefits are "no more restrictive than the predominant treatment limitations applied to substantially all medical and surgical benefits covered by the plan" and (2) "there are no separate treatment limitations that are applicable only with respect to [mental health benefits]". *Id*.

These broad goals and restrictions were implemented through regulations developed by various-agencies, after soliciting input from interested parties. The Interim Final Rules were implemented on an expedited basis, followed by extended comments and the Final Rules.

**B. The Interim Final Rules**

The Interim Rules required parity between mental health benefits and medical benefits with the same "classification," of which there were six: (1) inpatient, in network; (2) inpatient, out of network; (3) outpatient, in network; (4) outpatient, out of network; (5) emergency care; and (6) prescription drugs. The Interim Rules applied to quantitative[2] and nonquantitative

---

[2] The Parity Act itself described treatment limitations that are "quantitative": limits on the frequency of treatment, number of visits, days of coverage or other similar limits on the scope or duration of treatment. 29 U.S.C. §1185a(a)(3)(B)(iii).

treatment limitations, of which there were also six, including for example medical management standards limiting or excluding benefits based on medical necessity or appropriateness. 29 CFR §2590.712(c)(4)(ii).

The Interim Final Rules sought to explain how parity was required regarding nonquantitative treatment limitations:

> A group health plan (or health insurance coverage) may not impose a nonquantitative treatment limitation with respect to mental health or substance use disorder benefits in any classification unless, under the terms of the plan (or health insurance coverage) as written and in operation, any processes, strategies, evidentiary standards, or other factors used in applying the nonquantitative treatment limitation to mental health or substance use disorder benefits in the classification are comparable to, and are applied no more stringently than, the processes, strategies, evidentiary standards, or other factors used in applying the limitation with respect to medical/surgical benefits in the classification except to the extent that recognized clinically appropriate standards of care may permit a difference.

29 CFR §2590.712(c)(4)(ii).

In soliciting further comment on the Rules (and in response to earlier input), the Interim Rules' Preamble acknowledged that not all mental health treatment settings correspond directly to those for medical or surgical conditions, and that the interim regulations "do not address the scope of services issue." 75 Fed. Reg. at 5416-17 (Feb, 2, 2010).

**C.  The Final Rules**

The Final Rules were published in November 2013, effective with respect to plan years beginning July 2014. They retained the Interim Rules' six benefits classifications, and restricted group plans' ability to impose nonquantitative treatment limitations in two additional situations, one of which is potentially relevant here: "Restrictions based on geographic location, *facility type*, provider specialty and other criteria that limit the scope or duration of benefits for services provided under the plan or coverage." 29 CFR §2590.712(c)(4)(ii)(H) (emphasis added).

Like the Interim Rules, the Final Rules sought to explain their application with examples. Nicole relies on Example 9, as did one of the two primary cases she cites, *Craft*. If the Final Rules applied—or if they inform the scope of the Interim Rules—Example 9 is "on point":

> (i) Facts. A plan generally covers medically appropriate treatments. The plan automatically excludes coverage for inpatient substance use disorder treatment in any setting outside of a hospital (such as a freestanding or residential treatment center). For inpatient treatment outside of a hospital for other conditions (including freestanding or residential treatment centers prescribed for mental health conditions, as well as for medical/surgical conditions), the plan will provide coverage if the prescribing physician obtains authorization from the plan that the inpatient treatment is medically appropriate for the individual, based on clinically appropriate standards of care.
>
> (ii) Conclusion. In this Example 9, the plan violates the rules of this paragraph (c)(4). Although the same nonquantitative treatment limitation—medical appropriateness—is applied to both mental health and substance use disorder benefits and medical/surgical benefits, the plan's unconditional exclusion of substance use disorder treatment in any setting outside of a hospital is not comparable to the conditional exclusion of inpatient treatment outside of a hospital for other conditions.

*See* 29 C.F.R. §2590.712(c)(2)(ii)(C)(Example 9).

**D.  The Plan**

Nicole's family was covered under the 2011 and 2012 CHI Plan[3]. The plan included modifications meant to comply with the Parity Act and the then-in-effect Interim Final Rules. *See* Dkt. #44-1, AR_Plan 000050.

The Plan provided coverage for a range of Mental Health Services:

---

[3] The Plans are substantively identical for purposes of this case. They are attached to CHI's Motion for Summary Judgment [Dkt. #44] as Exhibits 1 (2011) and 2 (2012). Together they are Bates-stamped AR_Plan_00001 through 000268). The claims file (AR_Claim 000001-000114) is located at Dkt. #45.

> *Mental Health Services*
>
> Covered:
> Benefits for all of the Covered Services previously described in this SPD are available for the diagnosis and/or treatment of an Illness Affecting Mental Health. Medical Care for the treatment of an Illness Affecting Mental Health is covered when rendered by a:
> - Physician;
> - Psychologist, Clinical Social Worker, or Clinical Professional Counselor working within the scope of his or her license;
> - Spiritual counselor who holds a pastoral counseling degree; or
> - Licensed Marriage Family Therapist.
>
> Additional counselors may also be covered when supervised by a Physician. Please contact the Catholic Health Initiatives Medical Plan Customer Service Team at the toll-free telephone number listed on the back of your ID card for more information.

[Dkt. #44-1 at AR_PLAN-000052-53] The Plan specifically addressed coverage for both Residential Treatment Facilities and Skilled Nursing Facilities:

> *Residential Treatment Facilities*[4]
>
> Covered:
> Benefits for Diagnostic Tests, X-Ray and Laboratory charges related to the residential treatment will be covered.
>
> Not Covered:
> ***Benefits shall not be provided for room and board charges*** or for halfway houses or boarding houses.

[Dkt. #44-1 at AR_PLAN-000061 (emphasis added)]

---

[4] The Plan explained that **Residential Treatment Facilities** "means a duly licensed facility that treats an intermediate level of substance abuse on both an inpatient and outpatient basis. It provides a detailed regimen that includes full-time residence and full-time participation by the patient within a residential treatment facility which provides room and board, evaluation and diagnosis, counseling, referral and orientation to specialized community resources." [Dkt. #44-1; AR_PLAN 0000127].

*Skilled Nursing Facilities*[5]

Covered:
Benefits will be provided for the following Covered Services when you receive them in a skilled Nursing Facility:
•**Bed, board,** and general nursing care; and
•Ancillary services, such as, but not limited to, drugs and surgical dressings or supplies.

Not Covered:
Benefits shall not be provided for an uncertified Skilled Nursing Facility[.]

[Dkt. #44-1 at AR_PLAN-000061 (emphasis added)].

In short, the Plan expressly covered room and board for medical treatment at a Skilled Nursing Facility and expressly excluded room and board charges for mental health services at a Residential Treatment Facility.

**E. Nicole's Claim.**

Nicole has a long history of mental health issues. She was admitted to Island View, a residential treatment facility, in July 2011. Her family sought coverage under the Plan for the room and board charges she would incur, and was told that that was not a covered benefit. CHI and its agents consistently rejected similar subsequent claims, because they were not covered under the Plan. Nicole appealed twice, arguing that the Parity Act required coverage for the room and board charges because the Plan covered similar charges at a Skilled Nursing Facility—essentially the same argument she makes here.

The final denial relied on the Plan's exclusion, and also cited that the Plan was self-funded. It also claimed there were no cases analyzing whether a residential treatment facility is

---

[5] The Plan explained that **Skilled Nursing Facilities** "means those services provided by a Registered Nurse (R.N.) or licensed practical nurse (L.P.N.) which require the clinical skill and professional training of an R.N. or L.P.N. and which cannot reasonably be taught to a person who does not have specialized skill and professional training. Benefits for Skilled Nursing Service will not be provided due to the lack of willing or available non-professional personnel. Skilled Nursing Service does not include Custodial Care Service. [Dkt. #44-1; AR_PLAN 0000127].

equivalent to a skilled nursing facility for purposes of the Parity Act, and noted there was no requirement that a Plan provide the coverage Nicole sought. Dkt. #45 at AR_CLAIM 000111-112.

Nicole timely sued in this Court, seeking coverage. Both parties seek summary judgment, conceding that the facts are not disputed and the issue presents a purely legal question—one with limited precedent.

## II. DISCUSSION

**A. Summary Judgment Standard.**

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In determining whether an issue of fact exists, the Court must view all evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Anderson Liberty Lobby, Inc*., 477 U.S. 242, 248-50 (1986); *Bagdadi v. Nazar*, 84 F.3d 1194, 1197 (9th Cir. 1996). A genuine issue of material fact exists where there is sufficient evidence for a reasonable fact finder to find for the nonmoving party. *Anderson*, 477 U.S. at 248. The inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52. The moving party bears the initial burden of showing that there is no evidence which supports an element essential to the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the movant has met this burden, the nonmoving party then must show that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250. If the nonmoving party fails to establish the existence of a genuine issue of material fact, "the moving party is entitled to judgment as a matter of law." *Celotex*, 477 U.S. at 323-24.

**B. A Residential Treatment Center is not equivalent to a Skilled Nursing Facility under the Interim Final Rules.**

Nicole argues[6] that CHI's final denial of her appeal was wrong on all three counts: the Parity Act does apply to self funded plans, and a residential Treatment Center is equivalent to a Skilled Nursing Facility—and the two coverages must be "on par"—under the Interim Final Rules. She claims that the third ground for denial (that the Parity Act does not require residential treatment coverage) was not and is not her argument; she argues instead that if a plan covers an analogous level of care for medical treatment, it must also cover it for mental health treatment.

Nicole argues that the Ninth Circuit already held in *Harlick v Blue Shield of California,* 686 F.3d 699, 709-710 (9th Cir. 2011) that "for purposes of achieving mental health treatment and medical treatment, residential treatment must be covered where skilled nursing is covered." [*See* Nicole's Motion for Summary Judgment, Dkt. #47 at 11].

This is an overstatement of *Harlick*'s holding, and the cited pages contain nothing that could be so paraphrased. Instead, the Court rejected Harlick's claim that the residential treatment center she used (Castlewood) *was* a "skilled nursing facility": "It was not an abuse of discretion for the Plan administrator to conclude that Castlewood was not an SNF or a "similar institution licensed under the laws of any other state" within the meaning of the Plan." *Id*. at 710.

In rejecting the insurer's argument that that "residential care is not a benefit that it must provide under the [California] Parity Act for a severe mental illness, even if such care is medically necessary," (*id*. at 712), the Ninth Circuit recognized that there is not always a direct analogue between medical and mental care:

---

[6] Nicole also disputes CHI"s claim that there are no cases addressing whether residential treatment centers are the mental health equivalent to skilled nursing facilities, pointing to a case decided under California law, *Harlick v Blue Shield of California*, 686 F.3d 699 (9th Cir. 2011).

> Blue Shield's argument lacks support in common sense. Some medically necessary treatments for severe mental illness have no analogue in treatments for physical illnesses. For example, it makes no sense in a case such as Harlick's to pay for time in a Skilled Nursing Facility—which cannot effectively treat her anorexia nervosa—but not pay for time in a residential treatment facility that specializes in treating eating disorders.

*Id.* at 716. But that was not *Halick*'s holding. Instead, *Harlick*'s holding turned on medical necessity: "the most reasonable interpretation of the [California] Parity Act and its implementing regulation is that plans within the scope of the Act must provide coverage of all "medically necessary treatment" for "severe mental illnesses" under the same financial terms as those applied to physical illnesses." *Id.* at 719.

Nicole also relies on *Craft*, *supra.* But *Craft* is not directly on point, either. It addresses the Parity Act, and it declines to dismiss the insurer's motion to dismiss Craft's claim that the Parity Act required coverage for residential treatment. But its rationale was that excluding residential treatment impacted the *quantitative* level of care: "The practical effect of the residential treatment exclusion is that Jane Doe receives fewer hours or days of coverage for medically necessary nursing care than, for example, an elderly person would receive to rehabilitate a broken hip." *Craft v. Health Care Serv. Corp.*, 2015 U.S. Dist. LEXIS 37926 (N.D. Ill. 2015) at *13. And, more problematically, it relies on the Final Rules' Example 9, discussed above. But that pre-supposes that the Final Rules, and that Example, apply, or reveal what the Interim Final Rules always required.

CHI argues that the Final Rules (including their effort to address the "scope of services issue" that was admittedly left out of the Interim Final Rules) do not apply retroactively. *See generally Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 208 (1988). Indeed, it argues, even if the Final Rules simply *clarified* the ambiguous Interim Final Rules (rather than changed them), that new interpretation cannot be applied retroactively. *See Covey v. Hollydale Mobilehome Estates*,

125 F.3d 1281 (9th Cir. 1997) ("fairness concerns dictate that courts must not lightly disrupt settled expectations or alter the consequences of past actions."); *Wilson v. Frito-Lay N. Am*. 961 F. Supp.2d 1134 (N.D. Cal 20-13) (retroactive application of a regulatory clarification contravenes due process.).

  This retroactivity argument is correct and persuasive, and it means that Example 9 is not an accurate portrayal of the Interim Final Rules' application to this case. The remaining issue, then, is whether the Interim Final Rules required the Plan to cover room and board for residential mental health treatment because it covered room and board for medical treatment at skilled nursing facilities—a question not directly addressed in any authority before the court.

  CHI argues that the Interim Final Rules plainly declined to address—declined to require—coverage for mental health treatment settings for which there was not an analogous medical treatment setting:

> Some commenters requested, with respect to a mental health condition or substance use disorder that is otherwise covered, that the regulations clarify that a plan is not required to provide benefits for any particular treatment or treatment setting (such as counseling or non-hospital residential treatment) if benefits for the treatment or treatment setting are not provided for medical/surgical conditions. Other commenters requested that the regulations clarify that a participant or beneficiary with a mental health condition or substance use disorder have coverage for the full scope of medically appropriate services to treat the condition or disorder if the plan covers the full scope of medically appropriate services to treat medical/surgical conditions, even if some treatments or treatment settings are not otherwise covered by the plan. Other commenters requested that MHPAEA be interpreted to require that group health plans provide benefits for any evidence-based treatment.
>   The Departments recognize that not all treatments or treatment settings for mental health conditions or substance use disorders correspond to those for medical/surgical conditions. The Departments also recognize that MHPAEA prohibits plans and issuers from imposing treatment limitations on mental health and substance use disorder benefits that are more restrictive than those applied to medical/surgical benefits. **These regulations do not address the scope of services issue.**

1   Interim Final Rules Under the Paul Wellstone and Pete Domenici Mental Health Parity and
2   Addiction Equity Act of 2008, 75 FR 5416, 2010 WL 342465 February 2, 20120 (emphasis
3   added).

4   The Interim Final Rules specifically invited further comment on this un-addressed issue,
5   and the Final Rules require such coverage.  But the Interim Final Rules did not. Those Rules are
6   not retroactive, and they do not inform the application of Rules that patently declined to address
7   the issue.

8   Nicole's arguments for coverage make sense from a policy perspective, and they
9   succeeded in changing the Final Rules. But the Plan exclusion at effect when she incurred the
10  room and board charges does not violate the Interim Final Rules, and it does not violate the
11  Parity Act.

12  Plaintiffs' Motion for Summary Judgment [Dkt. #47] is **DENIED**. Defendants' Motion
13  for Summary Judgment [Dkt. #44] is **GRANTED**. Plaintiff's ERISA appeal is **DENIED**, and the
14  clerk shall enter judgment for the Defendants.

15  IT IS SO ORDERED.

16  Dated this 30th day of June, 2016.

_Ronald B. Leighton_
Ronald B. Leighton (as auth/dn)
United States District Judge